**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

WILLIAM M. TYREE, JR.          )
     PLAINTIFF, Pro se          )
                                )
     v.                         )          C.A. 93-12260-NG
                                )
WILLIAM F. WELD, ET AL.         )
     DEFENDANTS                 )

PLAINTIFF'S MOTION AND MEMORANDUM OF LAW IN SUPPORT
OF THE PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Come's now the Plaintiff, William M. Tyree, **Pro se**, (after having
fired his court appointed counsel, **Bingham & McCutchen**, Attorney(s)
Swift, Moran and Mitchell, for refusing to bring the following
argument. Counsel claimed the argument was not viable), and Tyree
moves this United States District Court, (USDC), Gertner, J., to
allow this Motion and ORDER that the Defendant's Motion For Summary
Judgment and or Dismissal is denied based on the following herein
supported by Affidavit. Affidavit outlines 17 month placement of
Tyree into the East (B) Wing of MCI-Walpole, (MCIW), from the West
(A) Wing that was compounded by the Defendant's reduction - denial to
Tyree of Contact Visitation, Property, Rehabilitation and general
Law Library access without due process.

As early as **Carlo v. Gunter, 520 F.2d 1293 (1st Cir. 1975)**, the
Defendant Weld, Rampone, DuBois and Maloney were put on notice that
transfer of Tyree into the East (B) Wing had to occur via a hearing:

> "...Transfer of prisoners to a different wing of the same
> prison, wherein conditions of confinement were more
> stringent, was a serious deprivation requiring at least
> a minimal level of due process...Fact that reassignment

of prisoners to different wing of the same prison was
denominated an administrative reclassification rather
than a punitive transfer was of no moment in determining
inmates due process rights, where impact on the inmate
was the same...The district court found that the
conditions of confinement comtemplated in the future
for B wing were more stringent than those which plaintiffs
had previously enjoyed...(footnote 3) At issue is not a
simple loss of privileges but a significant modification
of overall conditions of confinement...We concur in its
implicit conclusion that the transfers would result in
a major change in the conditions of confinement...It is
clear that while an emergency may justify postponement
of due process as the court found, the minimal procedures
must be granted at the earliest practicable opportunity
thereafter...The unreviewable discretion of prison
authorities in what they deem to be an emergency is not
open ended or time unlimited. Plaintiffs misconduct after
their transfer **does not absolve defendants of their duty
to afford them a hearing on the ground that the result
would be a foregone conclusion**...Nor would the fact that
a wholesale reorganization of the prison was contemplated
completely absolve defendants from the requirement of
affording plaintiff's hearings...though we agree with the
district court that it could properly affect their timing
...If it appears that there are some as to whom no such
hearings are contemplated within a reasonable time, and
no sufficient justification for such delay exists, the
court will have the authority to deal with these cases..."

The Defendant's claim that they have state qualified immunity because
they didn't know their conduct was unconstitutional. **First**, Tyree
raised **Carlo v. Gunter** in his 1993 Complaint at ¶¶21. Tyree was not
as able in 1993 to write a pro se complaint and express himself as
Tyree is able to do so now. But to the credit of Tyree, Tyree did
cite **Carlo v. Gunter**; Second, Tyree is not claiming a state law
claim in his 1993 Complaint. Tyree is asserting a federal law claim
which entitled Tyree to a hearing at some point after being transferred
into the East (B) Wing, which the Defendant's denied to Tyree and
left Tyree to ROT in segregated confinement without any form of

hearing that was required by **Carlo v. Gunter**, a case directly on point; **Third,** the Defendant's may be safe from liability under the controlling state law, and qualify for state immunity to any damage demand. HOWEVER, the Defendant's have never to date, received a judicial decision that encompassed any argument on whether or not **Carlo v. Gunter,** (still in effect and good law), could have placed the Defendant's on **NOTICE** of a hearing requirement. Inaddition to Longval v. Commissioner of Correction, 861 N.E.2d 760 (2007), there were five other judicial decisions on the so-called **Haverty v. Commissioner of Correction,** 437 Mass. 737 (2002), **and Haverty v. Commissioner of Correction,** 440 Mass. 1, (2003). They are **Gilchrist v. Commissioner of Correction,** (COC), 48 MASS. App. Ct. 60 (1999); **Rivera v. Allen,** Suffolk Sup. Ct. No. 03-3659; **Johnson v. DuBois,** 1996 WL 1185052, Mass. Sup. Ct); **Dahl v. COC,** 61 Mass. App. Ct. 1118 (2004; and **Tibbs v. Duval**, 1998 WL 1284199, Mass. Sup. Ct. Not one of these so called **Haverty** Cases raised the case of **Carlo v. Gunter,** and addressed the federal questions that are connected with the case and the mass transfer of inmates such as Tyree (who had done nothing wrong), into the East (B) Wing.

**FEDERAL JUDICIAL REVIEW** OF THE EAST (B) WING LOCKDOWN

Inaddition to the eight caes above, the United States Court of Appeals reviewed and ruled in the cases of **Dellelo v. Maloney, U.S. District Court, No. 00-11813-EFH,** June 14, 2005, attached; and, **Davila v. Maloney, United State Court** of Appeals, **No. 05-2520,** attached. The 1st Circuit relief entirely on the case of **Sandin v. Conners,** 515 U.S. 472 / 115 S.Ct. 2293, 2396 (June 19, 1995), when ruling on both **Dellelo & Davila.** The case of **Sandin** does not, and cannot apply to the **Tyree** case now before Gertner, J., for at least five **major reasons:**

**first: Haverty (Haverty-I),** 437 Mass. 737, 749, footnote 20, found that: "...In this case, the motion judge concluded that the circumstances of the plaintiff-prisoner case are entirely different from those in **Sandin v. Conners...";**

**second: Conners** was punished by a prison disciplinary board. **Tyree** never received a disciplinary report in connection with the

4

17 month stay in the East (B) Wing segregation unit from August
1993 to April 1995;

**third: Sandin v. Conners** did not encompass a riot-or near
riot condition alleged by the Dept. of Correction, (DOC, as their
reason for using the 420 beds in the East (B) Wing of MCIW, as
a segregation unit;

**fourth: Sandin v. Conners** was handed down on June 19, 1995.
The 17 month stay in segregation that **Tyree** suffered on the first
lockdown of MCIW from August 1993 to April 1995, had concluded
by the time that **Sandin v. Conners** was decided on June 19, 1995.
**Tyree** was transferred on April 18, 1995, to Old Colony Correctional
Center in Bridgewater, Massachusetts where he remained until
October 1995, when **Tyree** was return to MCIW;

**fifth: Sandin v. Conners** not only is not related by the
**circumstances** of the case to the circumstances of the **Tyree** case,
but **Conners** received some form of due process prior to his
segregated confinement. **Tyree** received no due process whatsoever,
and after being placed into segregated East (B) Wing confinement,
the Defendants then stripped **Tyree** of contact visitation, property,
rehabilitation and law library access. None of these additional
denials were suffered by **Conners** in **Sandin v. Conners.**

Based on these five reasons and several others, **Sandin v.**
**Conners** does not apply to the circumstances of the **Tyree** case.
Based on these five reasons, and several others, the federal
judiciary has yet to squarely address the following federal
questions of law related to the July-August 1993 to April 1995
lockdown cited below:

(1). **DOES Carlo v. Gunter** apply to, and control
the requirement for transfer from the West (A) Wing of MCIW to
the East (B) Wing of MCIW?

(2). **DID Carlo v. Gunter** apply  to, and control
the question of whether or not **Tyree** had to receive a hearing at
some point in time after being placed into the East (B) Wing
segregation area from the West (A) Wing between July 1993 and April
18, 1995?; from April 19, 1995 to August 3, 2003?; from August 4,

2003 to the current time? (The West (A) Wing to East (B) Wing
transfers without hearings is ongoing as recent as the week of
November 15, 2007 and this issue needs to be addressed once and
for all).

(3). DOES Sandin v. Conners apply to the circumstances
of the Tyree case now before Gertner, J.?

(4). IF Carlo v. Gunter does apply and control the
requirement of a transfer hearing when an inmate is transferred
from the West (A) Wing into the East (B) Wing, were the Defendant's
Weld, Rampone, DuBois and Maloney on NOTICE of the hearing requirement
through the case of Carlo v. Gunter decided in 1975 (18 years before
the July 1993 lockdown began)?

(5). IF the Defendant's had sufficient notice via
the case of Carlo v. Gunter in 1975, that a hearing was required
when Tyree was transferred from the West (A) Wing into the East
(B) Wing, when the Defendant's failed to provide the hearing are
the Defendant's liable to Tyree, or do the Defendant's have
federal qualified immunity?

All of the existing judicial decisions from the Haverty Cases have
failed to address whether or not Carlo v. Gunter applies. None of
Haverty Cases addressed the matter of injunctive relief which Tyree
sought pursuant to ¶¶259(a) "return MCIW to status quo in effect
on July 13, 1993" which would automatically mean:

    first: return full contact visitation to MCIW;
    second: return all property items seized from Tyree which
            are set out in the attached affidavit;
    third: reinstate all job slots and educational/Vocational
            slots in effect as of July 13, 1993, seen in the 1993
            Complaint of Tyree at ¶¶30-32 required for proper
            rehabilitation;
    fourth: return full access to all inmates to the law library
            at MCIW.

    "...When civil rights plaintiff asks for injunction, defendants
    cannot assert qualified immunity defense...defendants right
    to summary judgment on the injunction demand depends on what
    due process law really and currently is..." Newman v. Burgin,
    930 F.2d 955, 957 (1st Cir. 1991).

Based on the reasons above, the **Tyree** case simply does not involve **Sandin** v. **Conners**. **Carlo** v. **Gunter** established a baseline in 1975 which was good law until at least April 18, 1995 when **Tyree** was transferred out of the first lockdown at MCIW (July 1993 to April 1995). **Tyree** argues that **Carlo** should control the entire lockdown from July 1993 to April 1995 (1st lockdown); April 19, 1995 to August 3, 2003 (2nd lockdown); August 4, 2003 to November 17, 2007 (3rd lockdown); and finally November 18, 2007 to the current time, (4th lockdown just implemented with the return of the "Security Threat Group" (STG) housing units that were condemned in **Haverty**. Upon consideration of **Carlo** v. **Gunter**:

> "...Official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...so long as the prior decisions gave reasonable warning that the conduct then at issue violated constititutional rights...The resulting focus in the case was...that a violation is not clearly established unless it is the subject of a prior case...on facts materially similar...in applying the objective immunity test of what a reasonable officer would understand, the significance of federal judicial precedent is a function in part of the judiciary's structure ...For purposes of qualified immunity, officials can still be put on notice that their conduct violates established law even in novel circumstances, as notice does not require facts of previous cases be materially or fundementally similar to situation in question; rather, silent question is whether the state of law at the time gives officials fair warning that their conduct is unconstitutional..."
> **Hope** v. **Pelzer**, 122 S.Ct. 2508, 2515-2519 (2002).

**Carlo** v. **Gunter** clearly alerted the Defendant's to the requirement of a hearing when **Tyree** was transferred from the West (A) Wing into the East (B) Wing in August 1993. State had to follow **Carlo**:

> "...The full impact of the Supremacy Clause was made clear... In the Marshall interpretation, the Clause meant essentially two things: (1) the states may not interfere in any manner with the functioning of federal government; and (2) federal action (whether in the form of a statute, a treaty, a court decision, or an administrative act), if itself constitutional, must prevail over state action inconsistent therewith..."
> **Schwartz**, **Constitutional Law**, 48 (2d. ed. 1979).

**Tyree** has alleged facts in his 1993 Complaint that qualify under the five factors necessary for a 1983 Action.[1/]

1 /

Pursuant to **Sample v. Diecks,** 885 F.2d 1099, 1110-1111 (3rd Cir. 1989), the U.S. Court of Appeals set out the five factors which must be met for a 1983 action to go forward:

(1). plaintiffs were deprived of a protected liberty or property interest;

(2). plaintiffs were deprived of the protected liberty or property interest without due process;

(3). defendants subjected plaintiffs to the deprivation, or caused the plaintiff to be subjected to the deprivation without due process;

(4). defendants were acting under the color of state law;

(5). plaintiffs suffered injury as a result of the deprivation which took place without due pocess.

**Tyree** plaintiffs through 1993 Complaint of Tyree can show:

(1). plaintiffs were deprived of protected liberty interest— that classification hearing required by **Carlo v. Gunter** provided, when **Tyree** was simply dumped into the East (B) Wing and never received any hearing after being transferred internally from the West Wing into the East (B) Wing (East (B) Wing Segregation unit (EWSU);

(2). plaintiffs were deprived of the protected liberty interest of the classification hearing that is mandated by **Carlo v. Gunter**, without due process. This was proven when the SJC made the finding in **Haverty** that found no inmates were classified into the East (B) Wing;

(3). defendants acting on a political platform of Bill Weld, and as political appointees of Governor Bill Weld, did implement the lockdown of Walpole prison without the procedural safeguards required by **Carlo v. Gunter** (which originated in post-riot conditions at Walpole prison in 1975). Defendants maintained that riot, or near riot conditions existed in 1993 which required the opening of a the 420 bed East (B) Wing, to contain all of the trouble makers. **Carlo v. Gunter** controls and is a case directly on point;

(4). defendants were all state employees acting under the color of state law as alleged in the 1993 Complaint of **Tyree**;

(5). plaintiffs suffered injuries as a result of being placed directly into the EWSU without the classification hearing that was required by **Carlo v. Gunter** which included, but is not limited to:

Haverty I: 437 Mass. 737, 738-739, 748-750 (2002)(SJC found that DOC did not comply with their own classification regulations; uncontested testimony; that DOC Commissioner attempted to repeal classification regulations; and others- SJC enjoined this attempt.

1/ footnote continued from previous page.

(a). reduction in contact visits allowed from 1993-1995;
(b). total denial of contact visitation April 9, 1995 to the
current time (contact visitation is protected by 1st, 9th and
14th Amendment rights, see Ramos v. Lamm, 485 F. Supp. 122, 150-151
at n.15 (D. Colo. 1979); also Hutchings v. Corum, 501 F. Supp. 1276,
1296 (W.D. Mo. 1980); Murray v. Phelps, 533 F. Supp. 742, 746
(W.D. LA. 1982); Hardaway v. Kerr, 573 F. Supp. 419 (W.D. Wisc.
1983); Blackburn v. Snow, 771 F.2d 556, 561 (1st Cir. 1985); Feeley
v. Simpson, 570 F.2d 364, 372-373 (1st Cir. 1978);
(c). reduction in items of property allowed between
1993-1995;
(d). total denial of most property items including all
personal clothing April 16, 1993 until now, without due process,
Bell v. Wolfish, 99 S.Ct. 1861, 1877 (1979); LeMaire v. Masse,
745 F. Supp. 623 (USDC, Or. 1990);
(e). reduction in rehabilitative programs from 1993-
1995;
(f). total removal of all rehabilitative programs: 4/9/93
until now. Governmental interest recognize the need for rehabilitation
of prisoners, Commissioner of Correction v. Myers, 379 Mass. 255,
264 (1979), also G.L.c. 124, §1(e), statutory right to rehabilitation;
(g). 23 hour a day lock down status, violating 8th
Amendment, was found in Haverty, 437 Mass. 737, 752-753 (2002),
as: "prolonged solitary confinement is highly toxic to psychological
functioning..."

The State of Massachusetts could not authorize the defendants to
violate the ruling of Carlo v. Gunter, nor the numerous statutes
and DOC promulgated regulations and the defendants are therefore
not immune from monetary damages:

> "...This court held that the Eleventh Amendment did
> not prohibit...this...case...Since the State could
> not authorize this action, the officer was stripped
> of his official or representtaive character and
> subject in his person to the consequences of his
> individual conduct..." Pennhurst State School & Hosp.
> v. Halderman, 104 S.Ct. 900, 909 (1984).

"Qualified immunity protects government officials performing
discretionary functions from liability and burdens of litigation
...Qualified immunity protects all but the plainly incompetent or
those who knowingly violate the law..." Rivera Rodriguez v. Beninato,
469 F.3d 1, 3-4 (1st Cir. 2006). The Supreme Court has stressed
the importance of resolving immunity questions at the earliest
possible stage in litigation, Ahern v. O'Donnell, 109 F.3d 809,
819-820 (1st Cir. 1997).

In deciding a Motion To Dismiss, this court, Gertner, J., must accept as true the allegations in the Complaint and draw all reasonable inference's in favor of the Plaintiff, **Jenkins v. McKeithen**, 395 U.S. 411, 412-422 / 89 S.Ct. 1843 (1969). **Tyree** clearly alleged that he was placed into the East (B) Wing without a hearing (for 17 months), that by itself is sufficient for this case to move forward beyond the Rule 12(b)(6) stage. Summary judgment can only be had for the Defendant's if they show no genuine question of material fact exists, **Rodriguez—Cuervos v. Wal—Mart Stores**, 181 F.3d 15, 19 (1st Cir. 1999). At the very least the following genuine questions of material facts exist in the **Tyree** case:

first: Was Tyree transferred into the East (B) Wing from the West (A) Wing in August 1993?

second: Was Tyree held in the East (B) Wing from August 1993 to April 1995 without a classification hearing that was convened to specifically classify Tyree into the East (B) Wing?

third: While in the East (B) Wing between August 1993 and April 1995, was Tyree stripped of contact visitation, property, rehabilitation and right of access to the law library?

---

**1/** footnote continued from previous page.

The defendants involved and named by **Tyree** were not involved in discretionary functions. They were at the time, the very policy makers and enforcers of the law within the Commonwealth. They knew or should have known the law. **Further,** as set out in the 1993 Complaint filed by **Tyree**, these defendants ran on political platform to get tought on criminals:

> "...I'm of the belief that prison should be like a tour through the circles of hell. In making it so, however, our task is a formidable one since **we have to undo many years in which Massachusetts treated crime as a social services matter rather than a public safety problem..." Remarks of William F. Weld,** "The Attorney General's Summit On Corrections" Monday, April 27, 1992. (See 1993 Complaint at ¶¶8-9)

In order to **undo many years** of laws and promulgated regulations, Bill Weld and his political appointees violated those statutes and regulations and ignored **Carlo v. Gunter**. This was not a disrectionary action by Weld and company. This was deliberate, premeditated act to violate the law that Weld and Company could not **"undo."**

Case 1:93-cv-12260-NG   Document 94   Filed 11/28/07   Page 10 of 10

10

For the reasons set out herein, Tyree moves this USDC, Gertner, J.,
to allow this Motion and deny the Defendant's Motion For Summary
Judgment and or Motion To Dismiss.$\frac{2}{}$

Respectfully submitted,                          November 16, 2007

William M. Tyree
Pro se
P.O. Box-100
S. Walpole, MA. 02071

---

2/ The Doctrine of Preclusion is also inapplicable because the USDC
is not bound by the Massachusetts Rules of Civil Procedure, Rule 23,
see:

U.S. District Court, **Wright**, **Miller** & **Cooper**, **Fed. Practice
And Procedure, Jurisdiction**, §4451 (1981 & 1995 Supp.), and
**Hiser v. Franklin**, 94 F.3rd 1287, 1291 (9th Cir. 1996); **Cooper
v. Fed. Reserve Bank Of Richmond**, 467 U.S. 867 (1984), would
allow the plaintiff's from **Tyree** and **Peterson** to seek damages even
if they were part of the state court filed cases. Although, the
plaintiff's from **Tyree**, and **Peterson** were never apart of any suit
in the state court.

2/ The cases of **Dellelo** and **Davila** both relate to lockdowns that
occurred after the August 1993 to April 1995 lockdown.

"...There is no iron curtain drawn between the Constitution and
the prisons of this country...A deprivation of constitutional rights,
even without proof of any further actual injury, entitles a plaintiff
to nominal damage...If further injury is proved - for example, the
anguish and frustration...flow[ing] from the patent unfairness...
it is compensable beyond nominal damages...The value of...
[constitutional] rights, while difficult of assessment, **must be
considered great...**" **Blake v. Commissioner of Corrections**, 403
Mass. 764, 770 (1/11/89).